## Tony PLANTE *v.* TYSON FOODS, INC.

CA 93-334 876 W.W.2d 273

Court of Appeals of Arkansas
En Banc
Opinion delivered May 18, 1994
[Rehearing denied June 22, 1994.*]

*Jay N. Tolley*, for appellant.

*Bassett Law Firm*, by: *Curtis L. Nebbin*, for appellee.

---

*Cooper and Mayfield, JJ., would grant rehearing.

JOHN E. JENNINGS, Chief Judge. Tony Plante hurt his right knee at work on September 12, 1988. He was ultimately treated by Dr. James Arnold, an orthopedic surgeon, who diagnosed a tear of the anterior cruciate ligament. On November 11, 1988, Dr. Arnold performed a "McIntosh repair," an orthoscopic surgical procedure.

On April 10, 1989, Dr. Arnold released Mr. Plante to return to work with no restrictions. Because there is a 20% failure rate with the McIntosh repair, Dr. Arnold instructed Plante to return periodically to his office for "evaluation and laxity testing" for the next five years.

Mr. Plante returned to Dr. Arnold's office on September 26, 1989, and July 26, 1990. He did not see Dr. Arnold on either occasion and the office notes designate these as "research visits." The claimant returned again to Dr. Arnold's office on July 22, 1991, for testing and evaluation. He was seen by Dr. Arnold on July 25, 1991, at which time it was determined that the McIntosh repair had failed and a synthetic ligament replacement was recommended.

The Commission found that the last bill received by respondents was paid on April 21, 1989; that no other bills were received from Dr. Arnold's office until July of 1991; and that the respondent was unaware that the claimant had been instructed to return periodically to Dr. Arnold's office.

This claim for additional compensation was filed on September 11, 1991. Before the Commission, the respondent contended that the statute of limitations had run. The claimant argued that the claim was not barred because medical services were "furnished" on September 26, 1989, and July 26, 1990. The Commission held the claim was barred and we agree.

Arkansas Code Annotated section 11-9-702(b) (Supp. 1993) provides, in part:

> In cases where any compensation, including disability or medical, has been paid on account of injury, a claim for additional compensation shall be barred unless filed with the Commission within one (1) year from the date of the last payment of compensation, or two (2) years from the date of the injury, whichever is greater.

The supreme court has held that the *furnishing* of medical services constitutes payment of compensation in the context of this statute, and that such "payment" suspends the running of the time for filing a claim for compensation. *Heflin* v. *Pepsi Cola Bottling Co.*, 244 Ark. 195, 424 S.W.2d 365 (1968); *Reynolds Metal Co.* v. *Brumley*, 226 Ark. 388, 290 S.W.2d 211 (1956); *Ragon* v. *Great American Indem. Co.*, 224 Ark. 387, 273 S.W.2d 524 (1954). *See also Cheshire* v. *Foam Molding Co.*, 37 Ark. App. 78, 822 S.W.2d 412 (1992).

In holding that the claim here was barred by the statute of limitations the Commission relied, correctly we think, on *McFall* v. *United States Tobacco Co.*, 246 Ark. 43, 436 S.W.2d 838 (1969). There, the supreme court said:

> The appellant is correct in his statement that we are committed to the rule under *Reynolds Metal Co.* v. *Brumley*, 226 Ark. 388, 290 S.W.2d 211, "that where an employer furnishes an injured employee medical services, this constitutes a payment of compensation or a waiver which suspends the running of the time for filing a claim for compensation." The keystone to this rule is the two words *"employer furnishes."* We have never held that medical services furnished by anyone *other* than the employer or his compensation insurance carrier, constitute payment of compensation or a waiver which suspends the running of the time for filing a claim for compensation. We are unable to see how an employer could *furnish* medical treatment without knowing, and without reason to know, that he is doing so.

The supreme court has also held that it is not the carrier's responsibility to find out whether medical treatments are continuing, but is rather the claimant's burden to act within the time allowed. *Superior Federal Sav. & Loan Ass'n* v. *Shelby*, 265 Ark. 599, 580 S.W.2d 201 (1979).

In the case at bar there is no contention that the respondent was aware of the claimant's visits to the doctor's office after April of 1989, nor was there any evidence that the respondent was aware that the doctor had instructed the claimant to return for periodic evaluation. The respondent therefore did not "furnish" any medical services after April of 1989, and the deci-

sion of the Commission holding the claim barred by the statute of limitations must be affirmed.

Affirmed.

ROBBINS, J., concurs.

COOPER and MAYFIELD, JJ., dissent.

JOHN B. ROBBINS, Judge, concurring. I concur with the majority opinion which holds that the Commission properly applied the statute of limitations as a bar to Mr. Plante's claim for additional benefits. I would add, however, that even if Mr. Plante's visits to Dr. Arnold's office on September 26, 1989, and July 26, 1990, constituted a furnishing of medical services by appellee and thus payments of compensation as Mr. Plante contends, his claim for additional compensation would nonetheless be barred by limitations. His claim was filed on September 11, 1991, well more than a year after his July 26, 1990, office visit. The July 25, 1991, office visit could not constitute a furnishing of medical services, nor does Mr. Plante argue that it did, because Dr. Arnold was not paid by appellee for this visit. Even if appellee paid for the 1989 and 1990 examinations as part of the original surgical charges, the July 25, 1991, examination was obviously not so covered because Dr. Arnold billed appellee for it after the visit.

JAMES R. COOPER, Judge, dissenting. I dissent because I strongly disagree with the majority's conclusion that the appellant's claim was barred by the statute of limitations because medical services were not furnished after April of 1989. There is no dispute concerning the essential facts: the appellant injured his knee in an industrial accident in 1988, underwent corrective knee surgery in 1988, returned to the surgeon for scheduled evaluation of the surgical results in 1989 and 1990, returned to the surgeon again in 1991, learned that the 1988 surgical repair had failed, and filed a claim for additional compensation two months later requesting the alternative treatment recommended by his surgeon, a synthetic ligament replacement. Nevertheless, the Commission denied the appellant's request for additional compensation on the grounds that the 1989 and 1990 examinations by the appellant's surgeon or office staff did not constitute the furnishing of medical treatment because the employer was unaware of

those return visits. In support of its decision, the majority cites *McFall* v. *United States Tobacco Co.*, 246 Ark. 43, 436 S.W.2d 838 (1969). I disagree because the *McFall* case is clearly distinguishable from the case at bar.

*McFall* involved a claimant who continued to receive treatment during the limitations period, and in that sense it is analogous to the circumstances in the present case. However, the majority fails to note a crucial distinction: the treatment at issue in *McFall* was rendered by a *second doctor* of whom the employer was unaware, *obtained by the claimant on his own initiative*. The fact that the treatment in *McFall* was rendered following an unauthorized change of physician is the crux of the opinion, which must be considered in order to comprehend the Court's statement that they were "unable to see how an employer could *furnish* medical treatment without knowing, and without reason to know, that he is doing so." *McFall, supra*, 246 Ark. at 47.

Our review in the present case is not limited to determining whether there is any substantial evidence to support the award: instead, we are obliged to examine the record for matters which would toll the statute or estop the appellee from pleading it. *Id.* at 44. The record shows that the appellant had regularly scheduled, yearly examinations with his original surgeon, an authorized treating physician. Furthermore, the procedure performed by the surgeon required such yearly examinations, because a substantial percentage of such operations fail and require further treatment. I think it is of no consequence whatsoever that the employer may have had no actual knowledge of the appellant's visits because the employer had abundant reason to know they would take place. To deny the appellant payment for subsequent treatment which was clearly needed and anticipated is pointless, contrary to the law, and unconscionable, and I vigorously dissent from this injustice.

MAYFIELD, J., joins in this dissent.